STONER–CAROGA CORP., INC.

v.

The UNITED STATES.

No. 623–82C.

United States Claims Court.

July 28, 1983.

Alfred R. Tyminski, Syracuse, N.Y., attorney of record, for plaintiff.

Jane A. Vanneman, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant; David M. Cohen, Director and Thomas W. Petersen, Asst. Director, Washington, D.C., of counsel.

## OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

PHILIP R. MILLER, Judge:

This is a suit for damages for breach of contract, in the sum of $10,800. Each party has filed a motion for summary judgment in its favor, supported by affidavits. It is

concluded herein that the facts admitted by both parties show that there is no genuine issue as to any material fact bearing on liability and that plaintiff is entitled to judgment on the issue of liability as a matter of law. However, the precise amount of plaintiff's damages remains to be proven.

I

The pertinent facts are set forth chronologically to the extent feasible.

On July 7, 1980, the General Services Administration's (GSA) Surplus Supply Center, National Capital Region (Center), issued an Invitation For Bids, for the sale of two surplus mobile homes. On July 22, 1980, the Center accepted the high bid of $456 made by Stoner-Caroga. The contract included a provision requiring Stoner-Caroga to make payment and remove the mobile homes from the Shipley Elementary School, Harpers Ferry, West Virginia, by August 5, 1980.

On August 25, 1980, a National Park Service representative at Harpers Ferry notified William Tesh, the contracting officer, that the mobile homes would have to be moved shortly, because local authorities were concerned that the homes would present a safety hazard once school opened in September. Mr. Tesh claims that on the same day, at his instruction, his employee attempted to contact the plaintiff on the telephone to convey this request but reported to him that the number listed by the plaintiff in its bid had been disconnected. Although plaintiff's president disputes this report, stating in an affidavit that plaintiff's telephone has been connected during the entire year 1980, for purposes of the present motions it is unnecessary to resolve such dispute.

Without further ado, again on the same day, Tesh had the National Park Service contact the only other bidder on the homes, Jefferson County Fair Association, Inc. (Jefferson), which agreed to purchase the homes for $100. Jefferson paid for the homes on August 27 and then removed them from the schoolyard on August 29. The Center did not send Stoner-Caroga a termination notice or a notice to cure a default prior to re-awarding the contract to Jefferson.

Meanwhile, on August 27, 1980, plaintiff also tendered payment of $456 to GSA for the mobile homes. The check was deposited by GSA and honored by plaintiff's bank on or before September 9, 1980.

Plaintiff asserts that on some unspecified date in the early fall of 1980 it entered into a contract to sell the mobile homes to Eastern Crane & Conveyor Co. for $10,800, and received a $1,000 deposit from Eastern. Although plaintiff does not claim that its delay in making payment until August 25, 1980, was caused by a failure of GSA to send it the proper forms to fill out for transfer of title to the homes, plaintiff's president states that in 1981 a GSA employee informed him there had been a mistake in that someone had forgotten to forward to plaintiff a copy of Form 97, which would have authorized receipt and transport of the mobile homes. Plaintiff does not make clear, however, that it was entitled to the form prior to payment. In any event, in a letter dated November 18, 1980, plaintiff wrote to Tesh asking him to forward the release forms necessary for Stoner-Caroga to take title to the mobile homes.

On January 8, 1981, plaintiff sent Tesh a mailgram again requesting the appropriate documents. Tesh states in his affidavit that it was at this point in time that he first noticed the letter of November 18 and the copy of the cancelled check from Stoner-Caroga.

On January 8, plaintiff notified the contracting officer of its dispute in accordance with clause 19 of the General Sale Terms and Conditions (March 1974 Edition) (SF 114c) which had been made a part of the sales contract in the IFB. On January 28, plaintiff requested a decision from the Comptroller General with respect to the dispute. On August 10, 1981, the Comptroller General issued a decision holding that the dispute "is appropriate for resolution under that act [Contract Disputes Act of 1978] rather than by our office." Plaintiff

then submitted a claim for damage to the contracting officer. When the contracting officer did not respond within 60 days, plaintiff filed this action pursuant to 41 U.S.C. § 605(c).

Plaintiff claims that the Default clause found in SF 114c requires the government to send a purchaser written notice of a default prior to termination which would give plaintiff the opportunity over a period of 15 days to cure the default and avoid termination. It asserts that by negotiating plaintiff's check, submitted as payment for the homes one month after the specified performance date, and by never notifying Stoner-Caroga of the resale of the mobile homes, the government waived the performance date. Plaintiff then claims that the failure of the defendant to provide the mobile homes specified in the contract was a breach of contract. Plaintiff asks the court to award it the profits it would have received as a result of its resale of the mobile homes, as well as reasonable attorneys fees.

Defendant contends that under the Default clause, the government was not required to send plaintiff a notice of default termination. Defendant also argues that there can be no waiver of the specified performance date because plaintiff was the first party to breach the contract. The government also asks for judgment entitling it to retain $356 as damages resulting from plaintiff's breach (the $456 it received from plaintiff less the $100 it received from Jefferson).

## II

Title 41 C.F.R. § 101–45.304–8(c)(4) (1981), states that the General Sale Terms and Conditions (SF 114c) is applicable to all government sales of property and "shall be made a part of all such sales invitations, either by reference or by attachment thereto or both." Accordingly, the IFB informed bidders that the solicitation was subject to SF 114c.[1]

SF 114c contains the following clause:

## 9. DEFAULT.

If, after the award, the Purchaser breaches the contract by failure to make payment within the time allowed by the contract * * * then the Government may send the Purchaser a 15-day written notice of default * * * and upon Purchaser's failure to cure such default within that period (or such further period as the Contracting Officer may allow), the Purchaser shall lose all right, title and interest which he might otherwise have acquired in and to such property as to which a default has occurred. The Purchaser agrees that in the event he fails to pay for the property or remove the same within the prescribed period(s) of time, the Government at its election and upon notice of default shall be entitled to retain (or collect) as liquidated damages a sum equal to the *greater* of (a) 20% of the purchase price of the item(s) as to which the default has occurred, or (b) $25 * * * *Provided further,* That the maximum sum which may be recovered by the Government as damages for failure of the Purchaser to pay for and remove the property shall be the formula amount. When the Government exercises this election, it shall specifically apprise the Purchaser, either in its original notice of default (or in separate subsequent written notice), that upon the expiration of the period prescribed for curing the default, the formula amount will be retained (or collected) by the Government as liquidated damages. * * *

This clause plainly states that if the purchaser breaches the contract by failing to pay the contract price within the time allowed by the contract or by failing to remove the property, the government's remedy is a 15-day written notice of default, and if the purchaser then fails to cure such default he loses all right, title and interest to such property and subjects himself to liquidated damages pursuant to a fixed formula. Since the government

---

1. Although the IFB referred to the 1970 edition of SF 114c, both parties rely on the March 1974 edition, which supersedes the January 1970 edition.

failed to give the plaintiff such written notice at least 15 days before it appropriated and resold the mobile homes, it follows that the government breached the contract. *See Kisco Co. v. United States,* 221 Ct.Cl. 806, 820, 610 F.2d 742, 750 (1979) and *Bailey Specialized Buildings v. United States,* 186 Ct.Cl. 71, 85, 404 F.2d 355, 363 (1968).

■ Defendant argues that Clause 9 merely permits the contracting officer to use the default notice in his discretion and that he may terminate the contract without it. However, defendant's argument is not supportable. The contracting officer's discretion is only with respect to terminating the contract because of the default, not with respect to the procedure once he has decided to terminate it. The purchaser loses all right, title and interest to the property only "upon [his] failure to cure such default" within the stated period. There is no provision allowing the government to terminate the contract without giving the purchaser the opportunity to cure the default. Furthermore, if there were, there would also be a provision prescribing the government's measure of liquidated damages for a termination without the default notice, as there is with it in Clause 9. Defendant furnishes no reason why there should be liquidated damages in connection with a termination after a default notice but none where there is no such notice. In instances where the government has permitted the contracting officer to terminate a *procurement* contract for default without any cure notice, it has known how to do so and specifically provided for it in its regulations and contract clauses without any ambiguity. *See* Federal Procurement Regulations, 41 C.F.R. §§ 1–8.602–3 and 1–8.707 (1981). Moreover, it has been held that an earlier version of the same clause with similar language requires the contracting officer to give the purchaser the default notice before the government may treat the sale contract as terminated. *Aleutco Corp. v. United States,* 244 F.2d 674, 676 n. 4 and 680 (3rd Cir.1957).

The only case cited by defendant, *Marley v. United States,* 191 Ct.Cl. 205, 423 F.2d 324 (1970), is not in point. In *Marley,* there was no issue as to the government's right to terminate a contract for default without having sent the contractor a default notice, because the government had in fact sent the contractor a notice which stated that the procurement contract there at issue would be terminated unless delivery was made by a certain date. *Id.* at 212, 423 F.2d at 327.

Finally, even if the clause were ambiguous as to whether it gave the contracting officer discretion on whether or not to give the default notice prior to termination or merely confined his discretion to whether or not to terminate at all, the plaintiff's construction is at least as reasonable as defendant's. Under such circumstances, pursuant to the rule of *contra proferentem,* the ambiguity should be resolved against the government which drafted the clause. *Bennett v. United States,* 178 Ct.Cl. 61, 64, 371 F.2d 859, 861 (1967); *Blount Bros. Constr. Co. v. United States,* 171 Ct.Cl. 478, 495–97, 346 F.2d 962, 972–73; *Peter Kiewit Sons' Co. v. United States,* 109 Ct.Cl. 390, 418 (1947).

■ The government claims that its attempt to reach the plaintiff by telephone was sufficient to protect the rights of the plaintiff. However, since Clause 9 of SF 114c called for a written notice, even actual oral notice would have been insufficient. *See Bailey Specialized Buildings v. United States,* 186 Ct.Cl. at 85, 404 F.2d at 363.

■ With respect to defendant's contention that plaintiff may not recover damages for the government's breach because plaintiff breached the contract first by failing to make payment and remove the property by August 5, the short answer is that if there was a breach by plaintiff[2] defendant waived it at least for a reasonable time by failing to give plaintiff prompt notice. There is no basis for any inference that if defendant had given such notice plaintiff

---

2. Plaintiff asserts its delay was attributable to the government's failure to furnish it the prop-

er form for transfer of title to the mobile homes.

would not have cured the default by making payment (as it did on August 27) and removing the mobile homes within the 15 days it was allowed by the contract. Waiver may also be inferred from the facts that 20 days later, on August 25, the contracting officer directed a subordinate to call plaintiff and urge it to remove the mobile homes and that on August 27 GSA accepted plaintiff's payment for the homes.

Defendant contends that even if plaintiff is entitled to judgment, it is not entitled to recover its anticipated profits on the resale of the mobile homes because SF 114c limits plaintiff's damages as follows:

**15. LIMITATION ON GOVERNMENT'S LIABILITY.**

Except for reasonable packing, loading, and transportation costs, when a return of property at Government cost is authorized, the measure of the Government's liability in any case where liability of the Government to the Purchaser has been established shall not exceed refund of such portion of the purchase price as the Government may have received.

To permit this clause to limit generally plaintiff's damages for defendant's breach of the contract to refund of plaintiff's purchase price would render defendant's consideration for the contract illusory. Defendant could hold plaintiff to its promise to pay the purchase price even if the surplus houses turned out not to be worth the price; but defendant could rescind at will without penalty. On the assumption that the parties did not intend a void contract, the Court of Claims construed Clause 15 to apply only in the limited circumstances that (1) a need for the property develops after it has been declared surplus and offered for sale, or (2) a serious mistake has been made resulting in a sizable discrepancy between the true value of the item and the amount bid. *Harry Thuresson, Inc. v. United States,* 197 Ct.Cl. 88, 98, 453 F.2d 1278, 1283 (1972); *Benjamin v. United States,* 172 Ct.Cl. 118, 138, 348 F.2d 502, 516 (1965); *Freedman v. United States,* 162 Ct.Cl. 390, 403, 320 F.2d 359, 366 (1963). And *see also Torncello v. United States,* 231 Ct.Cl. ——,

——, 681 F.2d 756, 769 (1982). Clearly, the government did not intend an illusory contract here, since it now asks this court to award it damages for the plaintiff's failure to remove the property by the date specified in the IFB.

In this case, plaintiff can recover its lost profits upon a resale by showing that the defendant knew, or should have known, that plaintiff intended to resell the mobile homes. *See Everett Plywood Corp. v. United States,* 206 Ct.Cl. 244, 259, 512 F.2d 1082, 1091 (1975); Uniform Commercial Code § 2–715. In his affidavit, plaintiff's president states that the corporation had entered into 20 contracts with the government for the sale of surplus property, including one where the government has agreed to store the property until plaintiff resells the goods to a third party. Due to this prior and continuing course of dealing between the parties, the government reasonably should have known that Stoner-Caroga intended to resell the mobile homes to a third party. Hence, plaintiff is entitled to recover the lost profits it would have received had the government provided the mobile homes.

However, although the record on summary judgment shows the price Stoner-Caroga would have received for the resale of the homes, the exact amount of its lost profit cannot be determined since plaintiff has not proven the costs it would have incurred in transporting or repairing the homes incident or prior to resale.

Therefore, plaintiff's motion for summary judgment is granted with respect to liability but not with respect to the actual amount of damages since that has not been fully established, while defendant's motion for summary judgment is denied.

It is hoped that the parties will be able to stipulate the amount of plaintiff's actual damages. In any event, the parties are directed to report to the court on or before August 20, 1983, what, if any, further proceedings are required.